UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| WAYNE R. KELLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:13 CV 1891 CDP |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

This is an action for judicial review of the Commissioner's decision denying Wayne Kelly's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* Section 205(g) of the Act provides for judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g).

In his application for benefits, Kelly alleged a period of disability beginning on November 1, 2008. Kelly claims that he is disabled because of back pain resulting from an injury sustained in 2008. He also claims that he suffers from depression and alcohol abuse related to his back pain. Kelly claims that these impairments prevent him from engaging in substantial Gainful Activity (SGA) and that the Administrative Law Judge (ALJ) erred in failing to fully develop the record when he refused to submit interrogatories from Kelly's attorney to the

vocational expert (VE) that testified at the administrative hearing, thereby violating Kelly's due process rights.

Because the ALJ's decision is supported by substantial evidence and because the ALJ did not violate Kelly's due process rights or fail to develop the record, I will affirm the Commissioner's final decision denying disability benefits.

I. **Procedural History**

Kelly filed an application for disability benefits on February 7, 2011. Kelly's application was denied on March 21, 2011 and he filed a timely application for a hearing before an ALJ on May 20, 2011. The hearing before the ALJ was held on May 15, 2012. The ALJ issued a decision on June 26, 2012, finding that Kelly was not disabled within the meaning of the Act because he was capable of successfully adjusting to other work that existed in significant numbers in the national economy. Therefore, the ALJ denied Kelly's application for benefits. On July 13, 2012, Kelly filed a request for review of the ALJ's decision with the Appeals Council. On July 24, 2013, the Appeals Council denied Kelly's request for review. Therefore, the ALJ's decision stands as the final decision of the Commissioner. Kelly filed this action for judicial review on March 31, 2014.

## II. Evidence Before the ALJ

### A. Medical Evidence

I have examined the administrative record in this case, including the medical evidence and the claimant's testimony. The record includes detailed information from medical examinations, testing, and the claimant's own testimony. Because the claimant does not contest the ALJ's assessment of the medical evidence, the claimant's impairments, or the RFC determination, I will not discuss the ALJ's evaluation of those issues. Nor will I discuss the ALJ's five-step evaluation process established by the governing regulations for determining whether a claimant is disabled. *See* 20 C.F.R. § 1520(a) (setting out the procedure used by an ALJ for determining when an individual is disabled).

### B. Vocational Expert's Testimony

At the hearing before the ALJ on May 15, 2012, a VE, Dale Thomas, testified on the issue of what work in the national economy the claimant was capable of performing. The VE also described Kelly's past relevant work and what descriptions in the Dictionary of Occupational Titles (DOT) they matched. After testifying that Kelly would not be able to perform any past relevant work, the ALJ asked the VE if there was other work Kelly could adjust to and perform. The VE responded:

> [T]here would be production work that such a person could do as a patcher, that's an electronics assembly job, the DOT number for the patcher is 723.687-010. That [INAUDIBLE] occupation is unskilled, sedentary production workers of which is an example, the numbers in the nation are 15,500 and in the region which would be Missouri 400. In addition there would be inspectors, testers, sorters, and weighers such as a touch up screener. A touch up screener has a DOT number of 726.684-110. And for that group the numbers are 7,7000 in the nation, 150 in the region. There are no other examples that I have.

(Tr. 77-78).

The VE was then questioned by Kelly's attorney, Jack Adams.[1] Adams and the VE participated in the following exchange:

> Q: As far as the numbers you gave in the jobs, was that an assumption of full time or part time jobs, the number of jobs available?
>
> A: Full time.
>
> Q: Okay and - - where are you pulling those numbers from, the number of jobs available?
>
> A: [INAUDIBLE] there are May 2010 and specifically the occupational employment survey data.
>
> Q: And does that Occupational Survey Employment data, does it make any difference between full time or part time or is there any information about that where they pull that data from?
>
> A: No I don't know the answer to that, where that data comes from. I'm looking back at my resource to try to determine where that comes from. I'm assuming because it's the one [INAUDIBLE] with the OES data that it comes from that survey but again I'm not positive.
>
> Q: And you don't know that survey if they take into factor 30 hours a week jobs, do they consider reportable or 20 hour a week or - -

---

[1] Jack Adams was Kelly's attorney during the hearing before the ALJ. In this action, Carolina S. Doney is representing Kelly.

>A: I have to admit, I'm not that familiar with the survey and how that data is gathered.

(Tr. 79). Adams went on to question the VE about where exactly he was looking up the DOT numbers and the VE responded "I'm relying on Skilltran Job Browser Pro for software." (Tr. 80). The VE also stated that he had not independently verified that the Skilltran software data matched the DOT.

The VE also testified, "I think I could go back and break those [jobs] down full time, part time" and that "[Adams] raise[s] an interesting point and I think I will find that out but I don't know [the percentage breakdown of full and part-time jobs] today." (Tr. 82-83).

After the VE's testimony, Adams asked the ALJ to keep open the record so that the VE could determine the ratio of full and part time jobs. The ALJ admitted that he was not entirely familiar with the issue and that he was open to considering any evidence Adams had on the issue. The ALJ informed Adams that he could submit written interrogatories as a follow-up and that the ALJ would give him fifteen days to do so. The ALJ also stated that it might be necessary to hold a supplemental hearing. When Adams did send his post-hearing interrogatories to the ALJ, the ALJ did not submit them to the VE because he determined that they were not necessary to fully develop the record.

5

## III. **The ALJ's Decision**

In his decision issued on June 26, 2012, the ALJ made the following findings of fact and conclusions of law:

(1) The claimant last met the insured status requirements of the Social Security Act on March 30, 2011.

(2) The claimant did not engage in substantial gainful activity during the period from his alleged onset of November 1, 2008 through his date last insured of March 30, 2011 (20 CFR 404.1571, *et seq*).

(3) Through the date last insured, the claimant had the following severe impairments: Degenerative disease of the lumbar spine; depression; alcohol abuse (20 CFR 404.1520(c)).

(4) Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

(5) After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he is limited to jobs that involve understanding, remembering and following simple instructions and directions in a routine work setting and that involve no more than occasional contact with others to perform job functions.

(6) Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

(7) The claimant was born on December 29, 1960 and was 50 years old, which is defined as a younger individual age 18-49, on the date last insured. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

(8) The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10) Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

(11) The claimant was not under a disability, as defined in the Social Security Act, at any time from November 1, 2008, the alleged onset date, through March 30, 2011, the date last insured (20 CFR 404.1520(g)).

(Tr. 17-26).

In his decision the ALJ explained that after reviewing the twenty interrogatories Adams proposed he declined to submit them because the VE's are not allowed to retain notes or other documentation regarding their file review or testimony, certain questions did not seek information that was not already reflected in the record of the hearings, and the issue of what is full-time versus part-time employment is a determination to be made by the ALJ, not the VE. (Tr. 25). The ALJ also stated that Kelly was capable of adjusting to other work that existed in significant numbers in the national economy. The ALJ also explained that he had conducted his own

examination of the record and the DOT in making his determination that submission of the interrogatories was unnecessary to fully and fairly develop the record.

## IV. Errors Alleged

Kelly alleges two points of error by the ALJ that can be essentially merged in one. Kelly claims that the ALJ violated his due process rights because he failed to fully and fairly develop the record when he did not submit the claimant's interrogatories to the VE. Because I find that the ALJ did not fail to fully and fairly develop the record and because his determination that the claimant was capable of performing work that exists in significant numbers in the national economy is supported by substantial evidence, I will affirm the Commissioner's decision denying disability benefits.

## V. Discussion

A court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). Substantial evidence is less than preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). As long as there is substantial evidence on the record as a whole to support the Commissioner's decision, a court may not reverse it because

substantial evidence exists in the record that would have supported a contrary outcome. *Id*. Nor may the court reverse because the court would have decided the case differently. *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992). Where the Commissioner's findings represent one of two inconsistent conclusions that may reasonably be drawn from the evidence, however, those findings are supported by substantial evidence. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001)

Disability is defined in social security regulations as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 404.1505(a). When determining whether or not an individual is disabled, the Commissioner must follow a five-step evaluation process. In the present case, Kelly does not contest the Commissioner's findings at steps one through four. Only the Commissioner's decision at step five is at issue. At step five, the Commissioner determined that Kelly could not perform his past relevant work. If a claimant cannot return to his previous occupation, the burden shifts to the Commissioner to show that Kelly could perform other work that exists in significant numbers in the national economy. § 20 C.F.R. § 404.1520(a)(4)(V). If the Commissioner determines that a claimant

can perform other work that exists in significant numbers in the national economy, then the claimant is not disabled. *Id*.

Testimony from a VE is substantial evidence when it is based on a correctly phrased hypothetical that accurately describes the claimant's condition. *Cox v. Astrue*, 495 F.3d 614, 620 (8th Cir. 2007). A VE may be used to assess whether there are a significant number of jobs available in the national economy the claimant can perform. *Id*. The ALJ has a duty to fully and fairly develop the record. *Wilcutts v. Apfel*, 143 F.3d 1134 (8th Cir. 1998) (internal citations omitted).

Kelly does not challenge the hypothetical the ALJ posed to the VE or the jobs numbers provided by the VE at the hearing. Instead, Kelly alleges that his ALJ's refusal to submit post-hearing interrogatories to the VE to determine the breakdown of full and part time jobs renders the decision invalid. I disagree. The interrogatories submitted inquired about information already on the record or information that the ALJ reasonably determined was unnecessary.

A VE is "neither required to articulate the percentage of available jobs that [are] part-time or full-time, nor to describe labor market conditions beyond the data readily available." *Dipple v. Astrue*, 601 F.3d 833, 836 (8th Cir. 2010). A VE is only required to state his opinion as to the number of jobs available in the national economy to a person with the applicant's RFC, age, work experience, and

education. *Whitehouse v. Sullivan*, 949 F.2d 1005, 1007 (8th Cir. 1991). Such information was contained in the record and it was not improper for the ALJ to rely on the VE. *See Id*.

Furthermore, even if a large percentage of the available jobs described by the VE were part time, that does not mean that the ALJ's decision was unreasonable, because the jobs numbers would have contained many full time jobs as well. Work existing in the national economy, is defined as "work that exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B). The two DOT job titles that the VE stated Kelly could perform amounted to over 500 jobs in Missouri and over 23,000 nationwide. (Tr. 77-78). *See Jenkins v. Bowen*, 861 F.2d 1083 (8th Cir. 1988) (stating that the presence of 500 jobs within a regions was a significant number); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987) (stating that 174 jobs available in the region was a significant number). Therefore, the ALJ's determination that significant jobs were available to the claimant is supported by substantial evidence.

The claim that because the VE had not examined the underlying data supporting his sources somehow renders his testimony unreliable is also without merit. *Dipple*, 601 F.3d at 836. The VE and the ALJ relied on jobs information from the DOT in reaching the conclusion that significant numbers of jobs existed

in the national economy. (Tr. 25, 77-79). The DOT is listed as an accepted source for national employment information in the governing regulations. *See* 20 C.F.R. § 404.1566(d)(1). A VE does not testify as a "census taker or statistician." *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009). Therefore, the ALJ was not obligated to forward the interrogatories asking the VE to state the specific data sources used in his calculations in order to fully and fairly develop the record. *Id*.

## V. Conclusion

Because the determination that submitting the interrogatories to the VE was unnecessary is reasonable and supported by substantial evidence, it did not violate Kelly's due process rights or constitute a failure to fully and fairly develop the record. Therefore, the ALJ's decision denying benefits because Kelly was capable of performing other work available in significant numbers in the national economy is supported by substantial evidence.

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying Wayne R. Kelly benefits is **affirmed**.

A separate judgment in accordance with this Memorandum and Order is entered this date.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 7th day of January, 2015.